SOUTH METROPOLITAN FIRE
PROTECTION DISTRICT,
Respondent,

v.

CITY OF LEE'S SUMMIT,
Missouri, Appellant.

No. SC 89558.

Supreme Court of Missouri,
En Banc.

March 17, 2009.

**660**

Paul A. Campo, Betsy Blake, Williams & Campo, P.C., Robert H. Handley, Michael A. Rump, City of Lee's Summit Law Dept., Lee's Summit, MO, for Appellant.

Cindy Reams Martin, Cindy Reams Martin, P.C., Lee's Summit, MO, for Respondent.

Joy D. McMillen, Timothy W. Jones, Doster Guin James Ullom Benson & Mundorf, LLC, Chesterfield, MO, Amicus Curiae (Missouri Association of Fire Protection Districts).

Howard C. Wright, Jr., Springfield, MO, for Amicus Curiae (Missouri Municipal League).

WILLIAM RAY PRICE, JR., Judge.

The city of Lee's Summit, Missouri acquired property pursuant to a voluntary annexation that was located in the boundaries of the South Metropolitan Fire District. After the annexation, a dispute arose over whether fire protection services and receipt of related revenues for the annexed property would remain with South Metro or be transferred to the city. The city claimed that the annexed property was excluded from the fire protection district pursuant to section 321.320.[1] South Metro argued that the annexed property remained part of the fire protection district pursuant to section 72.418.[2]

---

1. All statutory references are to RSMo 2000, unless otherwise noted.

Section 321.320 provides:

If any property, located within the boundaries of a fire protection district, is included within a city having a population of forty thousand inhabitants or more, which city is not wholly within the fire protection district, and which city maintains a city fire department, the property is excluded from the fire protection district.

2. Section 72.418 provides:

1. Notwithstanding any other provision of law to the contrary, no new city created pursuant to sections 72.400 to 72.423 shall establish a municipal fire department to provide fire protection services, including emergency medical services, if such city formerly consisted of unincorporated areas in the county or municipalities in the county, or both, which are provided fire protection services and emergency medical

services by one or more fire protection districts. Such fire protection districts shall continue to provide services to the area comprising the new city and may levy and collect taxes the same as such districts had prior to the creation of such new city.

2. Fire protection districts serving the area included within any annexation by a city having a fire department, including simplified boundary changes, shall continue to provide fire protection services, including emergency medical services to such area. The annexing city shall pay annually to the fire protection district an amount equal to that which the fire protection district would have levied on all taxable property within the annexed area. Such annexed area shall not be subject to taxation for any purpose thereafter by the fire protection district except for bonded indebtedness by the fire protection district which existed prior to the annexation. The amount to be paid annually by the municipality to the fire protection district pursuant

South Metro filed suit for a declaratory judgment and permanent injunctive relief. The trial court found that sections 72.418.2 and 72.418.3 applied and granted relief in favor of South Metro. The city appeals, arguing that section 321.320 applies and that, if section 72.418.2 applies, it is unconstitutional. Because the city challenges the validity of a statute, this Court has jurisdiction pursuant to Mo. Const. art. V, § 3.

Sections 72.418 and section 321.320 are in conflict, each providing a different result for whether the city or the fire protection district provides fire protection services to the annexed property. When section 72.418 is placed in the context of the boundary commission act, it can be read to apply to counties with a boundary commission, and section 321.320 can be read to apply to counties with no boundary commission. This Court applied section 321.320 in this manner in *Battlefield Fire Prot. Dist. v. City of Springfield,* 941 S.W.2d 491 (Mo. banc 1997). Because the city is not located in a county with a boundary commission, section 321.320 applies in this case. The judgment is reversed.

## I. Facts

The city is a constitutional charter city, located in Jackson County and Cass County. The city maintains and operates its own city fire department and emergency ambulance services.

South Metro is a fire protection district formed in accordance with chapter 321 and is a political subdivision of the state of Missouri. South Metro provides fire protection services and emergency ambulance services to the property within its geographic boundaries, which includes some property in Cass County.

In January 2005, the city annexed approximately 320 acres of undeveloped property in Cass County pursuant to a voluntary annexation agreement. Prior to annexation, the property was within the geographic boundaries of South Metro. As the city began developing the annexed property in January 2007, South Metro became aware that the city was using its fire department and emergency ambulance services for the area.

In October 2007, South Metro filed suit for a declaratory judgment and preliminary and injunctive relief. The trial court found that section 72.418 applied and granted declaratory judgment and permanent injunctive relief in favor of South Metro.

## II. Statutes

The legislature has enacted three statutes that address fire protection services and revenues for property included in a fire protection district and a city. These statutes are sections 321.320, 321.322,[3] and

hereto shall be a sum equal to the annual assessed value multiplied by the annual tax rate as certified by the fire protection district to the municipality, including any portion of the tax created for emergency medical service provided by the district, per one hundred dollars of assessed value in such area. The tax rate so computed shall include any tax on bonded indebtedness incurred subsequent to such annexation, but shall not include any portion of the tax rate for bonded indebtedness incurred prior to such annexation. Notwithstanding any other provision of law to the contrary, the residents of an area annexed on or after May 26, 1994, may vote in all fire protection district elections and may be elected to the fire protection district board of directors.

3. The fire protection district may approve or reject any proposal for the provision of fire protection and emergency medical services by a city.

3. All references to section 321.322 are to RSMo Supp.2007.

72.418. Sections 321.320 and 321.322 are included in chapter 321, titled "Fire Protection District." Section 72.418 is included in chapter 72, titled "Classification and Consolidation of Cities, Towns and Villages," in sections 72.400 to 72.430, titled "Boundary Commission."

### a. Section 321.320

Section 321.320 provides:

If any property, located within the boundaries of a fire protection district, is included within a city having a population of forty thousand inhabitants or more, which city is not wholly within the fire protection district, and which city maintains a city fire department, the property is excluded from the fire protection district.

The section was enacted in 1949 and amended in 1961 and 1969. As first enacted, the section provided:

If any property, located within the boundaries of the fire protection district in a county of the first class now or hereafter having a population of four hundred and fifty thousand inhabitants or more is now or hereinafter included with a city not wholly within such district, such property is excluded from the district.

Section 321.320, RSMo 1949.

The 1961 amendment made several changes to the 1949 version. It deleted the requirement that the property be located in a county of 450,000 inhabitants or more and added a requirement that the city have 40,000 inhabitants or more. The amendment also excluded application in first-class counties with a charter form of government and removed "now or hereinafter" from the verb phrase. As amended, the section provided:

If any property, located within the boundaries of the fire protection district in a county of the first class, except those having a charter form of government, is included within a city having a population of forty thousand inhabitants or more, which city is not wholly within the fire protection district, and which city maintains a city fire department, the property is excluded from the fire protection district.

Section 321.320, RSMo Supp.1961.

The 1969 amendment deleted the phrase "in a county of the first class, except those having a charter form of government." There have been no further amendments to this section.

### b. Section 321.322

Section 321.322 is the subsequent section to section 321.320 and provides in pertinent part:

1. If any property located within the boundaries of a fire protection district shall be included within a city having a population of at least two thousand five hundred but not more than sixty-five thousand which is not wholly within the fire protection district and which maintains a city fire department, then upon the date of actual inclusion of the property within the city, as determined by the annexation process, the city shall within sixty days assume by contract with the fire protection district all responsibility for payment in a lump sum or in installments an amount mutually agreed upon by the fire protection district and the city for the city to cover all obligations of the fire protection district to the area included within the city, and thereupon the fire protection district shall convey to the city the title, free and clear of all liens or encumbrances of any kind or nature, any such tangible real and personal property of the fire protection district as may be agreed upon, which is located within the part of

the fire protection district located within the corporate limits of the city with full power in the city to use and dispose of such tangible real and personal property as the city deems best in the public interest, and the fire protection district shall no longer levy and collect any tax upon the property included within the corporate limits of the city; except that, if the city and the fire protection district cannot mutually agree to such an arrangement, then the city shall assume responsibility for fire protection in the annexed area on or before January first of the third calendar year following the actual inclusion of the property within the city, as determined by the annexation process, and furthermore the fire protection district shall not levy and collect any tax upon that property included within the corporate limits of the city after the date of inclusion of that property:

. . . .

2. Any property excluded from a fire protection district by reason of subsection 1 of this section shall be subject to the provisions of section 321.330.

3. The provisions of this section shall not apply in any county of the first class having a charter form of government and having a population of over nine hundred thousand inhabitants.

4. The provisions of this section shall not apply where the annexing city or town operates a city fire department and was on January 1, 2005, a city of the fourth classification with more than eight thousand nine hundred but fewer than nine thousand inhabitants and entirely surrounded by a single fire district. In such cases, the provision of fire and emergency medical services following annexation shall be governed by subsections 2 and 3 of section 72.418, RSMo.

This section was enacted in 1985 and was amended in 1986, 1988, 1990, 1991, 1999, and 2005. The most recent amendment in 2005 occurred as part of Senate. Bill No. 256, which amended section 72.418 and repealed certain sections in chapter 321 that applied to St. Louis County. It changed the population requirement and added subsection 4, which excludes application of this section to certain cities. The city of Harrisonville is the only city currently meeting the criteria of this exclusion.

### c. Section 72.418

Section 72.418 provides in pertinent part:

2. Fire protection districts serving the area included within any annexation by a city having a fire department, including simplified boundary changes, shall continue to provide fire protection services, including emergency medical services to such area. The annexing city shall pay annually to the fire protection district an amount equal to that which the fire protection district would have levied on all taxable property within the annexed area. Such annexed area shall not be subject to taxation for any purpose thereafter by the fire protection district except for bonded indebtedness by the fire protection district which existed prior to the annexation. The amount to be paid annually by the municipality to the fire protection district pursuant hereto shall be a sum equal to the annual assessed value multiplied by the annual tax rate as certified by the fire protection district to the municipality, including any portion of the tax created for emergency medical service provided by the district, per one hundred dollars of assessed value in such area. The tax rate so computed shall include any tax on bonded indebtedness incurred subsequent to such annexation, but shall not

include any portion of the tax rate for bonded indebtedness incurred prior to such annexation. Notwithstanding any other provision of law to the contrary, the residents of an area annexed on or after May 26, 1994, may vote in all fire protection district elections and may be elected to the fire protection district board of directors.

3. The fire protection district may approve or reject any proposal for the provision of fire protection and emergency medical services by a city.

■ Section 72.418 enacted in House Bill No. 487 as one of seven sections—sections 72.400 to 72.420, RSMo Supp. 1991—to address the creation of boundary commissions [4] in certain counties ("St. Louis County Boundary Commission Act").[5] Pursuant to section 72.400, only a "first class county with a charter form of government which adjoins a city not within a county" could establish a commission. In *O'Reilly v. City of Hazelwood*, 850 S.W.2d 96, 100 (Mo. banc 1993), this Court declared the boundary commission act unconstitutional as a special law because it only authorized St. Louis County to establish a boundary commission.

Following this decision, the legislature enacted Senate Bill No. 256 in 1993, which repealed, amended and added several sections in chapter 321 and chapter 72.[6] The bill was enacted with an emergency clause that stated:

Because immediate action is necessary to provide several municipalities who have annexation proposals pending before the boundary commission, and because there is a dispute as to fire protection and emergency medical services jurisdiction between municipal fire departments and fire protection districts, this act is deemed necessary for the immediate preservation of the public health, welfare, peace and safety, and is hereby declared to be an emergency act within the meaning of the constitution, and this act shall be in full force and effect upon its passage and approval.

The bill retained the preceding version of section 72.418 as section 72.418.1 and added subsection 2. The section was amended in 1995, adding subsection 3. Nonetheless, St. Louis County is still the only county with a boundary commission.

### d. Economic Considerations

The determination of whether the city or the fire protection district provides fire protection services to the annexed property is important because of its economic impact, particularly to the fire protection district. The fire protection district must plan to provide services, invest in infrastructure, and allocate financial resources without control of any possible annexation. Practical and financial considerations of providing fire protection are also important to any annexing city. However, as for the cities, annexation is a voluntary activity. Sections 72.418 and 321.322, although

---

4. A boundary commission is a commission established by county ordinance with the purpose to review proposed boundary changes, including annexations, of any area within the county. The sections provide the powers and duties of the commission, the standard and method the commission applies to approve a proposed boundary change, and the procedure to adopt boundary changes in the county.

5. See *O'Reilly v. City of Hazelwood*, 850 S.W.2d 96, 99 (Mo. banc 1993).

6. Senate Bill No. 256 was titled "An Act to repeal sections 321.655, 321.660, 321.665, 321.670, 321.675, 321.680 and 321.685, RSMo 1986, and sections 72.418, 321.300 and 321.650, RSMo Supp.1992, relating to fire protection districts, and to enact in lieu thereof three new sections relating to the same subject, with an emergency clause."

providing different results, craft an economic adjustment to address this concern for both entities.

Pursuant to section 72.418, the fire protection district will continue to provide the fire protection services, but the fire protection district can no longer tax the annexed property except for bonded indebtedness in existence prior to the annexation. To provide the district with the appropriate funding, section 72.418 provides that the city will pay annually to the district what it would have levied on the taxable property in the annexed area.

Pursuant to section 321.322, the city will provide the fire protection services, but the city shall compensate the district with a mutually agreed upon amount to cover all obligations of the fire protection district to the annexed property. The district shall convey to the city title to any tangible real and personal property the district owned in the annexed property. The district no longer can levy taxes in that area except for bonded indebtedness existing prior to the annexation pursuant to section 321.330.

Section 321.320 does not address the economic impact of the exclusion of the annexed property from the fire protection district. This section provides the district with no direct compensation from the city. The district only is able to levy taxes on the property for the payment of indebtedness existing prior to the annexation pursuant to section 321.330.[7]

### III. Sections 321.320 and 72.418 are in conflict

Sections 321.320 and 72.418 are unambiguous standing separately. However, when the sections are examined together,

they conflict with respect to whether the city or the fire protection district provides fire protection services to the property at issue and what resources are available to each entity.

Section 321.320 provides:

If any property, located within the boundaries of a fire protection district, is included within a city having a population of forty thousand inhabitants or more, which city is not wholly within the fire protection district, and which city maintains a city fire department, the property is excluded from the fire protection district.

The annexed property is located in South Metro's boundaries and is included in the city, which has a population in excess of 40,000 inhabitants, maintains a fire department, and is located within, but not wholly within, the boundaries of South Metro. According to section 321.320, the property will be excluded from the fire protection district.

Section 72.418.2 provides in pertinent part:

Fire protection districts serving the area included within any annexation by a city having a fire department, including simplified boundary changes, shall continue to provide fire protection services, including emergency medical services to such area . . .

The city acquired the property through annexation and subject to the provisions of section 72.418, the fire protection district shall continue to provide the services.

The annexed property in this case fits the requirements for application of both sections. However, because each section provides for a different result, the legislature could not have intended both to apply

7. The Court is not aware why the legislature would choose such different models for these
three statutes.

to this situation. The Court must determine which statute to apply.

## IV. Analysis

### a. Traditional Rules of Statutory Construction

Statutory interpretation is an issue of law that this Court reviews de novo. *See Finnegan v. Old Republic Title Co. of St. Louis, Inc.,* 246 S.W.3d 928, 930 (Mo. banc 2008). "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *State v. McLaughlin,* 265 S.W.3d 257, 267 (Mo. banc 2008). In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words. *Id.*

Where two statutory provisions covering the same subject matter are unambiguous standing separately but are in conflict when examined together, a reviewing court must attempt to harmonize them and give them both effect. *City of Clinton v. Terra Found., Inc.,* 139 S.W.3d 186, 189 (Mo.App.2004). If harmonization is impossible, "a chronologically later statute, which functions in a particular way will prevail over an earlier statute of a more general nature, and the latter statute will be regarded as an exception to or qualification of the earlier general statute." *Smith v. Mo. Local Govt. Employees Retirement System,* 235 S.W.3d 578, 582 (Mo. App.2007); *see also State ex rel. City of Springfield v. Smith,* 344 Mo. 150, 125 S.W.2d 883, 885 (1939).

Rules of statutory construction cannot be rigidly applied. Most often, for every rule suggesting one resolution, another rule exists that suggests the contrary. *See* Karl Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed,* 3 VAND. L.REV. 395, 401–06 (1950). However, the main purpose of these rules of statutory construction is to determine legislative intent and give meaning to the statutory language. Counsel for each party has thoughtfully presented their respective clients' best arguments as follows.

### i. The City's Argument

The city argues that the plain language of section 321.320 provides that property that is within the boundaries of a fire protection district and "is included within a city" will be excluded from the district and the use of the present tense indicates legislative intent to apply this statute prospectively to all inclusions. The city further states that the 1969 amendment supports the argument that the legislature intended a broad application of section 321.320 because it removed the requirement that the county be a first-class county.

The city makes several arguments that section 72.418 should be read in context of the boundary commission act and should only apply to counties with a boundary commission. First, the city emphasizes the reference in section 72.418 to "boundary changes," which is a term used exclusively in the boundary commission act. Second, the city notes that the emergency clause of SB 256, the bill that enacted section 72.418, stated that "immediate action is necessary to provide several municipalities who have annexations pending before the boundary commission. . . ." Third, the city argues that several legislative acts do not support the trial court's interpretation that the legislature intended section

72.418 to apply to all annexations by any city. The legislature did not repeal section 321.320 when it enacted section 72.418, and the addition of subsection 4 to section 321.322—expressly stating that subsections 2 and 3 of 72.418 applied to certain cities—would be unnecessary if section 72.418 applied so broadly.

The city finally claims that the statutes can be harmonized by placing section 72.418 in the context of the boundary commission act and limiting its application to annexed property located in counties with a boundary commission. Section 321.320 would apply to annexed property in counties with no boundary commission. In the alternative, if the sections are in irreconcilable conflict, section 321.320 applies because it is more specific, only applying to those cities meeting the population requirement.

### ii. South Metro's Argument

South Metro argues that section 72.418 applies because the plain language of section 72.418.2 provides that fire protection districts serving property included within "any annexation by a city" shall continue to provide these services. It argues that the court does not need to look to the context of the act to determine the meaning or legislative intent because the plain language of section 72.418 is unambiguous.

South Metro makes several arguments that the legislature did not intend to limit the application of section 72.418 to only counties with a boundary commission as the city argues. First, it argues that if the legislature intended such a limited application, it would not have used the phrase "any annexation," but would have used the term "boundary change," which only occurs in counties with a boundary commission and includes annexations. Further, the phrase "including simplified boundary changes" following "any annexation" actu-

ally expands its application to reach changes that occur in counties with a boundary commission.

Second, South Metro argues that SB 256 was not enacted only to address counties with a boundary commission. The bill amended sections in chapter 321 that did not affect or have any relationship to the boundary commission chapter. Although the city argues that the emergency clause calls for immediate action because of pending annexations before the boundary commission, the clause also calls for immediate action "because there is a dispute as to fire protection and emergency medical services jurisdiction between municipal fire departments and fire protection districts...." Further, the bill was enacted after the decision in *O'Reilly* which declared the boundary commission act unconstitutional as a special law. 850 S.W.2d at 100. As a result of this, South Metro argues it is logical that the legislature would enact some sections that apply to all counties to prevent future constitutional challenges.

Third, South Metro argues the amendment of subsection 4 to section 321.322 indicates intent to apply section 72.418 when two sections potentially apply to an annexation. Accordingly, it argues that even though this subsection does not apply here, it is evidence of a legislative intent to favor applying section 72.418 to annexed property.

South Metro claims that the statutes can be harmonized by limiting the application of section 321.320 to property included in a fire protection district and a city in 1961. This interpretation is supported by the 1961 amendment deleting "now or hereinafter" from the verb phrase. In the alternative, if the sections are in irreconcilable conflict, section 72.418 controls because it addresses the subject matter more specifically. Section 72.418 is more specific, South Metro argues, because it references

"annexation" as the method by which the property is included in both boundaries, addresses the taxing authority over the annexed property, as well as provides that the fire protection district will have the authority to accept or reject proposals from the city to assume responsibility for these services. This section is also the most recently enacted.[8]

**b.**

Despite the skillful efforts of counsel, none of the above arguments is more persuasive than its corollary. Each argument is of relatively equal weight, and neither establishes a strong enough foundation on which to rule. Two issues tip the balance in favor of the application of section 321.320.

**i. Context**

■■■■ The first determinative consideration is the historical context of these statutes. Section 72.418 was enacted as part of the boundary commission act, addressing the creation of a boundary commission for certain counties. Subsequent amendments to section 72.418 did not change the fact that the section only applies in coun-

ties that establish a boundary commission. Section 321.322 also signals that the intended interaction between these two chapters is determined by the boundary commission distinction.

Section 321.322 immediately follows section 321.320. Section 321.320 applies to cities with a population of more than 40,-000 inhabitants, while section 321.322 applies to cities with populations of at least 2,500 but not more than 65,000.[9]

Particularly significant to the present controversy are subsections 3 and 4 of section 321.322. Subsection 3, which provides that this section "shall not apply in any county of the first class having a charter form of government and having a population of over nine hundred thousand inhabitants," excludes application in St. Louis County, the only county currently with a boundary commission. This exclusion is evidence of intent to provide a different result for the providers of fire protection services depending on whether the annexation takes place in a county with a boundary commission or with no boundary commission. This distinction makes the placement of section 72.418 in the boundary commission act highly signifi-

8. Both parties mention sections 320.300 and 320.310, RSMo Supp.2007, in the "Volunteer Fire Protection Association" subsection of chapter 320, titled "Fire Protection." South Metro argues that section 320.310 presents evidence of a legislative intent to favor the fire protection district as the provider of fire protection services. Section 320.310.2 provides that "fire protection districts, municipal fire departments, and volunteer fire protection associations, as defined in section 320.300, shall be the sole provider of fire suppression and related activities." Section 320.310.3 provides that "only upon approval by the governing body of a municipal fire department, fire protection district, or volunteer fire protection association ... shall any other association, organization, group or political subdivision be authorized to provide the fire suppression response and related activities...." The city argues that these sec-

tions are only intended to apply in volunteer fire protection districts. Because these sections do not directly address property included in a fire protection district and a city, the Court need not consider these sections.

9. Sections 321.320 and 321.322 also have the potential to overlap in application. Section 321.322 applies only to cities with a population of 2,500 but not more than 65,000. Section 321.320 applies to cities with a population in excess of 40,000. Because the city's population here is 70,000, section 321.322 does not apply in this case. However, cities with a population between 40,000 inhabitants and 65,000 inhabitants would fit the requirements of each section. Although this issue is not presented here, it is unclear how these sections would apply in that situation.

cant, intended to address annexed property in counties with a boundary commission excluded from the general application of section 321.322.

Subsection 4 provides an additional exception to section 321.322. That subsection provides that section 72.418 will apply "where the annexing city or town operates a city fire department and was on January 1, 2005, a city of the fourth classification with more than eight thousand nine hundred but fewer than nine thousand inhabitants and entirely surrounded by a single fire district." In effect, this provision authorizes section 72.418 to apply to Harrisonville, a city in a county with no boundary commission. However, this application was explicitly provided and narrowly drawn, providing further evidence that section 72.418 is primarily intended to apply in counties with a boundary commission. If section 72.418 is to apply in counties with no boundary commission, this exception would not be necessary. In short, subsection 4 is the exception that proves the rule.

### ii. *Battlefield* Decision

The most compelling reason to apply section 321.320 is the Court's previous decision in *Battlefield Fire Prot. Dist. v. City of Springfield,* 941 S.W.2d 491 (Mo. banc 1997). In *Battlefield,* a fire protection district brought an action challenging the annexation by the city of Springfield of property included in the district. *Id.* at 491. The district argued that it had standing to contest the annexation based on the loss of tax revenues. *Id.* at 492. The Court stat-

ed that the loss in revenue would have been sufficient for standing were in not for section 321.320,

... which provides that whenever a city having a population of forty thousand or more inhabitants annexes an area previously lying within a fire protection district, the fire protection district no longer has the obligation to provide service to that area. *Id.*

As a result, the district was not adversely affected by the annexation because the decline in the need to provide fire services offset the loss in tax revenues.[10] *Id.*

South Metro argues that *Battlefield* can be distinguished because the Court addressed section 321.320 in the context of standing and did not directly address the interplay between section 321.320 and section 72.418. Although South Metro is correct, the application of section 321.320 was necessary to support the holding to deny the fire protection district standing.

The Court's interpretation of section 321.320 in *Battlefield* is not contrary to any existing statute or any case law, and the legislature has not amended or repealed this section as a result of this interpretation.[11] The discussion noted above provides fair reason to apply sections 72.400 to 72.430 to boundary commission counties and to apply chapter 321 and the sections therein to counties with no boundary commission.

For South Metro to prevail, it would be necessary to distinguish or overrule *Battlefield.* There is not a sufficient reason to do so.

---

10. As discussed earlier, the economic considerations may be more complicated than assumed in *Battlefield.*

11. Although the Court in *Med. Shoppe Int'l v. Dir. of Rev.,* 156 S.W.3d 333, 334 (Mo. banc 2005), stated that it was speculative to infer legislative approval from legislative inaction

following a decision interpreting the statute, it is undisputed that the legislature has power to amend or change the statute following the decision if it disagrees with the Court's interpretation. Although the inaction is not conclusive of legislative approval, such inaction can be considered.

## V. Conclusion

In summary, applying the rules of statutory construction to sections 72.418 and 321.320 does not conclusively resolve their conflicting application. The provision in section 321.322 and section 72.418's placement in the boundary commission act indicate that the application of each statute may turn on whether the county has a boundary commission. Further, *Battlefield* is precedent for applying section 321.320.

To harmonize and give both sections meaning, the conflict between the two sections is resolved by applying section 72.418 to counties with a boundary commission and section 321.320 to counties with no boundary commission. The city is not located in a county with a boundary commission, and section 321.320 applies to exclude the annexed property from the fire protection district. The judgment is reversed.

All concur.