Natalie R. ROSS, Appellant,

v.

**DIRECTOR OF REVENUE,**
Respondent.

No. SC 90317.

Supreme Court of Missouri,
En Banc.

Feb. 9, 2010.

---

Jeffrey S. Eastman, Keleher & Eastman, Gladstone, MO, for Appellant.

Chris Koster, Atty. Gen., Jeremiah J. Morgan, Deputy Solicitor Gen., Jefferson City, MO, for Respondent.

MARY R. RUSSELL, Judge.

At issue in this case is whether the Director of Revenue properly revoked the driver's license of a driver who refused to submit to a breathalyzer test offered more than 90 minutes after a police officer encountered her at the scene of an accident.[1]

---

1. This Court has jurisdiction over this case pursuant to Mo. Const. art. V, sec. 10, as this case was taken on transfer after its disposition by the court of appeals.

## Background

A police officer was sent to investigate a report of a woman standing on the shoulder of an interstate. When the officer arrived at the reported location, he observed fresh scrape marks on the roadway, but he did not immediately see the woman. He followed the scrape marks and discovered that a vehicle had traveled off the roadway and down an embankment, suffering extensive damage to its front end and driver's side.

The officer discovered a woman and a man inside the vehicle. Natalie Ross was in the front passenger seat, and Ryan Newbury was lying across the rear seats. Neither was injured, but a strong odor of intoxicants came from the car. The officer saw a marijuana pipe in the driver's seat of the vehicle, and the pipe contained the residue and odor of marijuana. The officer noticed that Ross's eyes were watery and bloodshot, and her speech was also impaired. She denied that she was the woman seen walking on the shoulder of the interstate, and she also denied that she was the driver of the vehicle. She identified the driver as a friend whom she could not name.

The officer asked Ross to exit the vehicle. She was missing a shoe, and she elected to walk barefoot up the snowy embankment to the interstate shoulder. She then was arrested for possession of drug paraphernalia and placed in the officer's patrol car.

During the officer's investigation at the accident scene, he saw footprints in the snow from the shoulder of the roadway to the driver's side of the vehicle. He believed the footprints were from high-heeled or female shoes. About halfway up the hillside, he found Ross's missing shoe.

He saw footprints consistent with Newbury's shoes around the passenger side of the vehicle, but he did not see Ross's footprints near the passenger side. The officer informed Ross she was also being arrested for careless and imprudent driving.

Because of Ross's lack of shoes and the cold temperature, the officer chose not to administer field sobriety tests at the scene. He transported her to a detention facility, where she was given and failed a series of field sobriety tests. She then was placed under arrest for driving while intoxicated (DWI), a charge to which she later pleaded guilty. *See* sec. 577.010, RSMo 2000.[2]

After her arrest for DWI, the officer read Ross the implied consent law for chemical testing. The implied consent law, section 577.020, outlines the circumstances in which a motor vehicle operator gives implied consent for chemical testing for blood alcohol or drug content (BAC). Relevant to the issues in Ross's case, it provides for implied consent in any circumstance in which the motor vehicle operator is "arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition." Sec. 577.020.1(1). After being informed of the implied consent law, Ross refused to submit to a breathalyzer test.

The timeline for the officer's interactions with Ross is as follows:

Around 2:15 a.m. The police officer encountered Ross at the crash site.

Around 2:20 a.m. Ross was arrested for possession of drug paraphernalia, then shortly afterward also was arrested for careless and imprudent driving.

Around 3:50 a.m. Ross was tested for sobriety, was placed under arrest for DWI, and refused to submit to a breathalyzer test after being read an implied consent advisory.

Based on Ross's refusal to submit to a breathalyzer test, the Director of Revenue sought to revoke her driver's license pursuant to the revocation statute, section 577.041. Ross challenges the revocation of her driver's license pursuant to subsection 4 of the revocation statute, which provides in relevant part:

If a person's license has been revoked because of the person's refusal to submit to a chemical test, such person may petition for a hearing before a circuit or associate circuit court in the county in which the arrest or stop occurred. . . . At the hearing the court shall determine only:

(1) Whether or not the person was arrested or stopped;

(2) Whether or not the officer had [r]easonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition . . . ; [and]

(3) Whether or not the person refused to submit to the test.

Sec. 577.041.4.

Ross argues that her license could not be revoked based on her refusal of the breathalyzer test because the officer was untimely in arresting her for DWI under the provisions of the warrantless DWI arrest statute, section 577.039.[3] Section 577.039 provides in relevant part:

An arrest without a warrant . . . for a violation of section 577.010 or 577.012 is lawful whenever the arresting officer

---

**2.** All statutory references to sections 577.010 and 577.039 are to RSMo 2000. All other statutory references are to RSMo Supp.2008.

**3.** Section 577.039 also applies to warrantless arrests for driving with excessive BAC.

has reasonable grounds to believe that the person to be arrested has violated the section, whether or not the violation occurred in the presence of the arresting officer and when such arrest without warrant is made *within one and one-half hours after such claimed violation occurred....*

Sec. 577.039 (emphasis added).

Ross asserts that her DWI arrest violated the warrantless DWI arrest statute because it occurred more than 90 minutes after she was allegedly driving, and she argues this unlawful DWI arrest provided no basis for the breathalyzer test that she refused. She contends that the 90–minute time limitation for a warrantless DWI arrest limited the reach of the implied consent law and, therefore, negated the consequences of her breathalyzer refusal. She maintains the implied consent law language stating that implied consent is given "subject to the provisions of sections 577.019 to 577.041" means the 90–minute time limitation of section 577.039 is incorporated into the implied consent provisions. *See* sec. 577.020.1.

The trial court rejected Ross's arguments that the 90–minute time limitation for warrantless DWI arrests applied to her license revocation based on a breathalyzer refusal. It upheld the revocation of her driver's license after determining that the revocation provisions outlined in section 577.041.4 were met because Ross was arrested, the arresting officer had reasonable grounds to believe that she was driving while intoxicated, and she refused a chemical test of her breath.

Ross's appeal asks this Court to determine whether her license was revoked properly despite the untimeliness of her DWI arrest under section 577.039.

## Standard of Review

 This Court reviews *de novo* Ross's statutory arguments. *Finnegan v. Old Republic Title Co. of St. Louis, Inc.,* 246 S.W.3d 928, 930 (Mo. banc 2008). "Where a statute's language is clear, courts must give effect to its plain meaning and refrain from applying rules of construction unless there is some ambiguity." *Home Builders Ass'n of Greater St. Louis, Inc. v. City of Wildwood,* 107 S.W.3d 235, 239 (Mo. banc 2003). There is no need to refer to other similar statutes where a statute's own language is clear. *See id.* Words in statutes are given their plain and ordinary meaning unless there is a contrary specific statutory definition, and where the plain and ordinary meaning controls, there is no need to apply rules of statutory construction. *Vance Bros., Inc. v. Obermiller Const. Servs., Inc.,* 181 S.W.3d 562, 564 (Mo. banc 2006).

 Where statutory interpretation is necessary, the legislature's intent must be ascertained and given effect. *S. Metro. Fire Prot. Dist. v. City of Lee's Summit,* 278 S.W.3d 659, 666 (Mo. banc 2009). Statutory language is considered in context and in comparison with other sections when necessary to determine its meaning, such as when two statutory provisions covering the same subject matter are unambiguous standing separately but are in conflict when examined together. *See id.* Statutes that are remedial, because they are intended to protect the public, are construed so they provide the public protection intended by the legislature. *See Hudson v. Dir. of Revenue,* 216 S.W.3d 216, 222 (Mo.App.2007).

## Revocation Was Proper

 This Court must uphold the revocation of Ross's driver's license if the revocation statute's requirements under section 577.041.4 were satisfied. *Fick v. Dir. of*

*Revenue*, 240 S.W.3d 688, 690–91 (Mo. banc 2007) ("In a proceeding in which a person's driver's license is revoked for refusing to submit to a chemical test, the trial court shall determine only whether: (1) the person was arrested; (2) the arresting officer had reasonable grounds to believe that the person was driving while intoxicated; and (3) the person refused to submit to the test.").

■ The only issue before this Court is Ross's contention that her license revocation cannot be upheld because she was not "arrested" in satisfaction of section 577.041.4(1).[4] She contends she was not "arrested" for revocation purposes because her DWI arrest was unlawful under the 90–minute time limitation of the warrantless DWI arrest statute, section 577.039.

Ross's arguments are not persuasive because nothing in the plain language of the warrantless DWI arrest statute, section 577.039, compels application of its 90–minute time limitation to the revocation statute, section 577.041. Section 577.039 is a statute applicable to criminal matters and by its own terms it applies to violations for DWI (section 577.010) and driving with excessive blood alcohol content (section 577.012). Civil license-revocation proceedings under the revocation statute are unrelated to the criminal provisions of the warrantless DWI arrest statute. The lawfulness of Ross's DWI arrest under the provisions of section 577.039 had no impact on whether she was "arrested" in satisfaction of the revocation statute.

■ Ross complains that it is unfair to uphold a license revocation where a DWI arrest fails to comply with the warrantless DWI arrest statute. But it is logical that the legislature has created distinctions between the available criminal penalties for DWI and the civil driver's license revocation procedures applied against intoxicated drivers. The legislature's intent in formulating these provisions was to ensure that the Director of Revenue can protect the public by suspending the licenses of persons who drive drunk, even when those same persons might benefit from procedural circumstances that shield them from certain criminal sanctions. *See Riche v. Dir. of Revenue*, 987 S.W.2d 331, 335 (Mo. banc 1999) (noting that the purpose of license revocation proceedings is entirely distinct from criminal punishment of drunken drivers and "designed to protect the public by quickly removing drunken drivers from Missouri's roads and highways").

Ross maintains that this Court's opinion in *Reed v. Director of Revenue*, 184 S.W.3d 564 (Mo. banc 2006), instructs that an untimely DWI arrest pursuant to the 90–minute limitation of section 577.039 provides no basis for a driver's license revocation. But *Reed* was not a revocation case. *Reed* held that the requirements of section 577.039 apply to proceedings under section 577.037, relating to the admissibility of chemical testing results into evidence. *See Reed*, 184 S.W.3d at 568. Nothing in *Reed* compels its application to Ross's case.

Further, regardless of Ross's contentions about the impropriety of her arrest under the warrantless DWI arrest statute, she was also "arrested" in satisfaction of

---

4. While Ross's briefs in this case challenge the trial court's findings as to probable cause, her attorney admitted during oral argument that there were no issues preserved as to the trial court's determinations related to probable cause under section 577.041.4(2). Accordingly, this Court need not review the trial court's finding that the arresting officer had reasonable grounds to believe that Ross was driving while intoxicated. There is also no need for this Court to discuss the trial court's finding that Ross refused the breathalyzer test, as she does not dispute this fact.

the revocation statute because she was under arrest for possession of drug paraphernalia as well as careless and imprudent driving. Section 577.041.4(2)(a) of the revocation statute required the trial court to determine if the arresting officer had reasonable grounds to believe that Ross was driving while intoxicated. But this case demonstrates that there can be facts providing the reasonable grounds that satisfy section 577.041.4(2)(a) even before or without a DWI arrest. Nothing in section 577.041.4(1) of the revocation statute requires the court to find that a person was arrested *for DWI*. Importantly, the implied consent law applies to any motor vehicle operator "arrested for *any offense* arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition." Sec. 577.020.1(1) (emphasis added). Where the arresting officer had reasonable grounds to believe that a person was driving while intoxicated, that person's arrest for any offense committed in conjunction with the suspected DWI offense would satisfy the requirement of section 577.041.4(1) for a refusal-based license revocation.

In Ross's case, her arrests for possession of drug paraphernalia and careless and imprudent driving arose out of acts existing simultaneously with the facts forming the arresting officer's reasonable grounds to believe she had been driving while intoxicated. At the time of her first two arrests, the officer already knew that her car had gone off an interstate and down an embankment and that it emitted a strong odor of intoxicants. He also had reasonable grounds to believe that she was in possession of a marijuana pipe, had watery and bloodshot eyes and mumbled speech, and had lied about driving her vehicle. Consequently, the facts of Ross's case satisfy the requirements of the revocation statute, section 577.041.4, regardless of Ross's DWI arrest.

Because the trial court did not err in finding that Ross was "arrested" in satisfaction of section 577.041.4(1), its judgment is affirmed.

PRICE, C.J., TEITELMAN, WOLFF, BRECKENRIDGE and LAURA DENVIR STITH, JJ., and GARY M. GAERTNER, Sp.J., concur.

FISCHER, J., not participating.