Nicholas Ray **COBLE**, Respondent,

v.

**DIRECTOR OF REVENUE**, Appellant.

No. SD 30360.

Missouri Court of Appeals, Southern District, Division One.

Oct. 7, 2010.

---

Chris Koster, Atty. Gen. & Jonathan H. Hale, for Appellant.

No brief filed by Respondent.

ROBERT S. BARNEY, Presiding Judge.

This appeal involves the judicial review of the revocation of Nicholas R. Coble's ("Driver") driving privileges by the Director of Revenue ("the Director") pursuant to section 577.041 [1] for refusing to submit to a breath analysis test to determine whether he was legally intoxicated. Subsequent to Driver's filing of his petition for review and after a hearing, the trial court ordered reinstatement of Driver's driving privileges and the Director appealed. The judgment is reversed.[2]

The record reveals that on the evening of March 6, 2009, in Greene County, Missouri, Driver was involved in a one-vehicle automobile accident. He had been operating the motor vehicle at the time of the accident. Two City of Strafford police officers, Jay Munhollen ("Officer Munhollen") and Jeffrey Ford ("Officer Ford"), who had been called to the scene by the

---

1. Unless otherwise stated, all statutory references are to RSMo Cum.Supp.2009.

2. Driver did not file a responsive brief in this matter but made his position known in the trial court.

Sheriff's dispatcher, responded to the scene.

Officer Munhollen testified he was dispatched around 8:15 p.m. to the scene of the accident and he arrived around 8:28 p.m.[3] He related that upon arrival he noticed an "automobile in the ditch" and observed Driver being evaluated by emergency medical personnel.[4] He stated he then interacted with Driver and observed that Driver "was sweaty. His eyes were glassy, bloodshot ... [and he] could smell a strong odor of intoxicant[s] coming from [Driver's] breath." Officer Munhollen also related that when Driver handed over his driver's license "he was trembling, kind of hesitant to talk to [him], avoiding [his] questions." During the course of their discussion, Driver told Officer Munhollen he had been fishing all day and denied imbibing any intoxicating beverages. Officer Munhollen then performed several field sobriety tests on Driver. He testified that while administering the horizontal gaze nystagmus test on Driver he observed indications of nystagmus and also noted that Driver was unable to complete the one leg stand test and the walk and turn test without "us[ing] his arms for balance." After performing the field sobriety tests and observing other indicia of intoxication, Officer Munhollen concluded that Driver had been driving while intoxicated, arrested him, and transported him to the police department. At the police department, Officer Munhollen informed Driver of his *Miranda*[5] rights and read Driver the requirements of the implied consent law. As previously related, Driver then refused to submit to a chemical test of his breath.

In his testimony, Officer Ford acknowledged that he was "a commissioned officer for Greene County as well as for [the City of] Strafford." He related he had been called to the scene of the accident, he made contact with Driver after Driver had been evaluated by the emergency medical personnel, and he observed that Driver's "eyes were bloodshot and watery. His speech was slurred. He was swaying from side to side. His hands were shaking as if he was really nervous." Driver indicated to him that he had been driving the vehicle and "he was going too quickly, was new to the area, didn't know the roads." Officer Ford also related that Officer Munhollen then took charge of Driver to perform field sobriety tests on him while Officer Ford investigated the scene of the accident and interviewed several witnesses.

In addition to the testimony of both Officers Munhollen and Ford, the Director, over Driver's objection, was permitted to introduce copies of the officers' police reports which were received into evidence by the trial court as Exhibit A.[6] Driver offered no evidence.

3. When asked why a Strafford police officer would respond to an accident located in Greene County, Officer Munhollen explained that "[t]he sheriff's department, all the officers were on calls, and they requested us to go."

4. Driver ultimately refused medical assistance.

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. Among other things, the police report went into detail about the field sobriety tests conducted on Driver prior to his arrest, to-wit: the horizontal gaze nystagmus test, the leg stand test and the walk and turn test. Additionally, it replicated the observations made in Officer Munhollen's testimony that Driver's breath smelled of intoxicants as well as observations that Driver had "bloodshot" and "glassy eyes." The police report also set out that Officer Munhollen had read Driver the "Implied Consent" law and that Driver had "refused the test."

At the conclusion of the hearing and arguments, the trial court took the matter under advisement. On January 4, 2010, the trial court entered its "Judgment" finding that the "Director ... failed to establish by a preponderance of the evidence that [Driver] was lawfully arrested and therefore [Driver's] Petition should be and hereby is sustained." Accordingly, the trial court ordered Driver's driving privileges reinstated. This appeal by the Director followed.

■ In her sole point relied on, the Director maintains the trial court erred in reinstating Driver's driving privileges because such a determination "erroneously declared and applied the law, in that the [trial] court improperly considered the lawfulness of [Driver's] arrest when determining whether the Director properly imposed the ... revocation of [Driver's] license."

■ In an appeal from a judgment reinstating driving privileges under section 577.041, we will affirm the trial court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Wagner v. Dir. of Revenue*, 134 S.W.3d 827, 828 (Mo.App.2004); *see Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "This Court must uphold the revocation of [a] driver's license if the revocation statute's requirements under section 577.041.4 were satisfied." *Ross v. Dir. of Revenue*, 311 S.W.3d 732, 735 (Mo. banc 2010).

'In a proceeding in which a person's driver's license is revoked for refusing to submit to a chemical test, the trial court shall determine only whether: (1) the person was arrested; (2) the arresting officer had reasonable grounds to believe that the person was driving while intoxicated; and (3) the person refused to submit to the test.'

*Id.* at 736 (quoting *Fick v. Dir. of Revenue*, 240 S.W.3d 688, 690–91 (Mo. banc 2007)); *see also* § 577.041.4. "A finding that any one of these criteria has not been met requires reinstatement of driving privileges." *Sullins v. Dir. of Revenue*, 893 S.W.2d 848, 849 (Mo.App.1995).

■ A hearing held in relation to the revocation of a driver's driving privileges for refusal to take a chemical breath test is a civil proceeding. *Id.* at 850. It is well-established that the exclusionary rule does not apply to civil proceedings. *Murphy v. Dir. of Revenue*, 170 S.W.3d 507, 510 (Mo. App.2005); *Garriott v. Dir. of Revenue*, 130 S.W.3d 613, 616 (Mo.App.2004).

As previously recited, at the hearing the officers opined that Driver was intoxicated on the evening in question; that he was arrested based on reasonable grounds to believe he was driving in an intoxicated condition;[7] and he refused to submit to a chemical test of his breath for alcohol content after being made aware of the provisions of section 577.020, RSMo Cum.Supp. 2007.

Driver's objections at trial chiefly centered on the Director's attempts to bring out evidence regarding the specifics of the accident, including what witnesses had observed and the time of the accident. Here, the trial court made no findings of facts or conclusions of law nor was it asked to.

---

7. "The terms 'reasonable grounds' and 'probable cause' are basically synonymous terms." *Arch v. Dir. of Revenue*, 186 S.W.3d 477, 480 (Mo.App.2006). Here, the officers observed Driver's eyes were glassy, bloodshot and they could smell a strong odor of intoxicants coming from Driver. Further, he failed at least two field sobriety tests. Probable cause to arrest was based on similar observations in *Norris v. Dir. of Revenue*, 156 S.W.3d 786, 788 (Mo.App.2005).

Further, the trial court made no announced credibility determinations. We do note that in closing remarks before the trial court, Driver made no complaints regarding the lack of probable cause for his arrest for driving while intoxicated or the lack of evidence showing Driver had refused the breath analysis test. Rather, Driver maintained "the State has failed in its burden to show a lawful arrest...." Driver clearly explained that his arrest was invalid because the Director had shown "no evidence as to time of accident," and that "we have an officer without jurisdiction attempting to make arrest, which is not a valid arrest." The issue to be resolved in the present matter, then, is whether Driver's "arrest" or "stop" satisfied the requirements of section 577.041.4. *See Ross,* 311 S.W.3d at 736.

Turning to his argument positing the illegality of his arrest because insufficient evidence of his time of arrest was shown at trial, Driver cited at trial to *Reed v. Dir. of Revenue,* 184 S.W.3d 564 (Mo. banc 2006), for the proposition that an arrest that violated section 577.039, RSMo 2000,[8] rendered a blood alcohol content test result inadmissible in license revocation and suspension proceedings. *Id.* at 568. Driver also referred to an unpublished opinion by the Western District of this Court which extended the *Reed* decision to invalidate a revocation due to a refusal to submit to a chemical test.

Recently in *Ross,* 311 S.W.3d at 733, the issue was "whether the [Director] had properly revoked the driver's license of a driver who [had] refused to submit to a breathalyzer test offered more than 90 minutes after a police officer encountered her at the scene of an accident." The Supreme Court of Missouri observed that "nothing in *Reed* compels its application to [the driver's case in *Ross* ]." *Id.* at 736. It determined that "[c]ivil license-revocation proceedings under the revocation statute [were] unrelated to the criminal provisions of the warrantless DWI arrest statute" and that "nothing in the plain language of ... section 577.039, [RSMo 2000,] compels application of its 90–minute time limitation to the revocation statute, section 577.041." *Id.* Furthermore, our high court set out that "[n]othing in section 577.041.4(1) ... requires the court to find that a person was arrested *for DWI,*" because "the implied consent law applies to any motor vehicle operator 'arrested for *any offense* arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition.'" *Id.* at 737 (quoting § 577.020.1(1), RSMo Cum.Supp.2007) (emphasis in original). Based on the teachings of *Ross,* the implication by Driver that his arrest had to have been shown to have taken place within 90 minutes of his accident has no merit in the context of a civil revocation proceeding pursuant to section 577.041.

■ Turning now to Driver's second argument at trial, that his arrest was unlawful because the police officers had no authority to arrest him outside of the City of

---

8. Section 577.039, RSMo 2000, states that
[a]n arrest without a warrant by a law enforcement officer ... for a violation of section 577.010 or 577.012 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated the section, whether or not the violation occurred in the presence of the arresting officer and when such arrest without warrant is made within one and one-half hours after such claimed violation occurred, unless the person to be arrested has left the scene of an accident or has been removed from the scene to receive medical treatment, in which case such arrest without warrant may be made more than one and one-half hours after such violation occurred.

Strafford, we note that in *Garriott*, 130 S.W.3d at 614, the Director revoked the driver's driving privileges pursuant to section 577.041 for refusal to submit to a breath analysis test. The trial court found, however, that the initial stop leading to the driver's arrest was invalid; hence, the trial court invoked the exclusionary rule to exclude all evidence collected after the driver's initial stop. *Id.* On appeal, observing that the Supreme Court of Missouri in *Riche v. Dir. of Revenue*, 987 S.W.2d 331, 334–35 (Mo. banc 1999), had reaffirmed that the exclusionary rule did not apply to civil license revocation proceedings, the Western District of this Court noted that "even if the stop was illegal, the evidence obtained would not be inadmissible in this civil case," and determined the trial court misapplied the law in reinstating the driver's driving privileges. *Garriott*, 130 S.W.3d at 616–17. The Court observed that section 577.041.4 "does not require a showing that the initial stop was valid, or even that the arrest was lawful." *Id.* at 617 n. 3.

Likewise, in *Arch v. Dir. of Revenue*, 186 S.W.3d at 478, the Director revoked the driver's driving privileges for refusing to take a breath analysis test. The trial court found that he was not "lawfully" arrested because the arresting officer did not have reasonable grounds to believe the driver was driving while intoxicated. *Id.* However, the Eastern District of this Court cited *Garriott*, 130 S.W.3d at 616 n. 3, for the proposition that section 577.041 "does not require a showing that the arrest made was lawful." *Arch*, 186 S.W.3d at 479. It then observed that there were reasonable grounds shown for the arrest of driver for driving while intoxicated and reinstated the revocation of the driver's driving privileges. *Id.* at 481.

Also, in *Sullins v. Dir. of Revenue*, 893 S.W.2d at 849, the driver sought judicial review of the revocation of his driver's license by the Director for refusing a chemical test of his blood alcohol content. The driver challenged the validity of his arrest, *inter alia*, asserting the arresting officers were "municipal officers of the municipality of Houston ...," but that he had been arrested outside of the city limits of the municipality of Houston. *Id.* "Implicitly, the trial court determined that evidence of [the driver's] refusal could not be considered because his arrest was invalid. Consequently, the [trial] court ruled that the revocation of [the driver's] driving privileges be reversed." *Id.* The reviewing court, however, agreed with the Director's contention of trial court error: that the "validity of the arrest was irrelevant in this civil proceeding because the exclusionary rule does not apply in civil proceedings." *Id.* at 850. This Court observed the limited applicability of the exclusionary rule to criminal proceedings, and determined that "[e]ven if the stop ... was illegal, the evidence of [the driver's] arrest and refusal may be considered in this case." *Id.* In the present matter, as in the cases cited above, the trial court's application of the law was in error. The Director's point has merit.

It has long been held that we may enter the judgment the trial court should have entered. Rule 84.14, Missouri Court Rules 2010; *see Garriott*, 130 S.W.3d at 617. The judgment of the trial court is reversed and the Director's revocation of Driver's driving privileges is reinstated.

LYNCH, J. and BURRELL, J., concur.