

# Missouri Court of Appeals
## Southern District
### Division Two

| | | |
|---|---|---|
| KH2, LLC, a Missouri limited liability company, | ) ) ) | |
| Plaintiff-Respondent, | ) ) | |
| vs. | ) ) | No. SD34166 |
| LEAH BETTS, acting in her official capacity as GREENE COUNTY, MISSOURI COLLECTOR OF REVENUE, | ) ) ) ) | Filed April 27, 2016 |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Associate Circuit Judge

AFFIRMED

This appeal arises from a grant of summary judgment in favor of KH2, LLC ("KH2"), and against Leah Betts, in her official capacity as Collector of Revenue of Greene County, Missouri ("Collector"), establishing KH2's rights as holder of an absolute estate to certain real property in fee simple. The trial court's judgment determined that Collector's inclusion of a claimed debt owed to the City of Springfield ("City") for the cost of nuisance abatement in a tax bill for real property purchased at public auction for non-payment of delinquent taxes had been waived, released, or extinguished by operation of law. On appeal, Collector contends that the

1

trial court erred in entering summary judgment in favor of KH2 because KH2 was an "owner" for purposes of section 67.398.[1]  Finding no merit in this contention, we affirm.

## Standard of Review

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered.  Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion.  We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially *de novo.*  The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially.  The propriety of summary judgment is purely an issue of law.  As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993) (internal citations omitted).

## Factual and Procedural Background

On August 26, 2013, KH2 was the successful bidder at a public auction of real property sold by Collector for non-payment of delinquent taxes, to-wit:

All of Lot Four Hundred Six (406) and Lot Four Hundred Seven (407) in McKoin Place Addition, in the city of Springfield, Greene County, Missouri, according to the recorded plat thereof in Plat Book H, Page 36.

(the "Property").

After receiving payment of the purchase price, Collector issued a certificate of purchase in writing to KH2, as provided by section 140.290.[2]  In compliance with all the requirements in section 140.405,[3] KH2 thereafter obtained a title search report specific to the Property and notified each holder of any publicly recorded deed of trust, mortgage, lease, lien or claim upon

---

[1] References to section 67.398 are to RSMo Cum.Supp. 2002.
[2] RSMo Cum.Supp. 2010.
[3] RSMo Cum.Supp. 2010.

the Property, including City, of that holder's right to redeem any interest it claimed. After the ninety-day redemption period expired, *see* section 140.405, and the Property was not redeemed, KH2 received a collector's deed for the Property on September 18, 2014.

As provided in section 140.330,[4] KH2 filed an action in the Circuit Court of Greene County on October 29, 2014, seeking to quiet title in the Property (case number 1431-CC01433, hereinafter the "Quiet Title Action"), wherein City was one of the named defendants. The circuit court entered a default judgment on January 8, 2015, declaring, in part, that the City had "no right, title or interest in the Property and that any right, title or interest of said [City] was extinguished[.]"

At some time not disclosed by the record, but apparently after August 26, 2014, City submitted to Collector three purported liens "for the abatement of nuisance conditions" for work performed by City's Department of Building Development Services, in addition to late fees, for inclusion in the 2014 real estate tax bill for the Property as provided by section 67.398. The first lien, designated "LEN 2013-00222C," represented a September 18, 2013 lien relating to a $168.24 charge for mowing the Property on September 9, 2013. The second lien, designated "LEN 2014-00063C," represented a June 23, 2014 lien relating to a $1,254.00 charge for cleaning the Property on June 16, 2014. The final lien, designated "LEN 2014-00065C," represented a June 24, 2014 lien relating to a charge of $159.05 for mowing the Property on June 14, 2014. Each of the three liens showed it had been released by the City's director of finance on August 26, 2014. Collector added the amounts of these liens ("abatement costs") to the Property's 2014 real property tax bill that she issued to KH2 on November 6, 2014.

KH2 tendered to Collector a check payable to her, dated March 4, 2015, in the amount of $324.47 as payment of the 2014 real property tax bill. KH2 asserted its tender was in the

---

[4] RSMo 2000.

3

"amount equal to all real estate taxes due with respect to the Property for 2014[.]" Collector subsequently rejected KH2's tender, alleging that the tendered amount "did not satisfy the real-estate-tax bill" and that the correct amount due was $1,877.00.

On April 13, 2015, KH2 initiated this declaratory judgment action against Collector seeking a judgment declaring KH2 the legal title holder of the real property in fee simple absolute. KH2 alleged that the additional charges were in violation of article X of the state's constitution, exceeded the Collector's authority, were not authorized by statute or ordinance, or alternatively, each charge constitutes an unperfected lien, as none were recorded with the recorder or otherwise perfected under Missouri law. KH2 further argued that its compliance with section 140.405 had extinguished each unperfected lien and that each had been declared extinguished by the circuit court in its default judgment in the Quiet Title Action on January 8, 2015.

Collector's answer to KH2's petition alleged that after KH2 received a certificate of purchase, on August 26, 2013, City spent public "money to abate nuisances that benefited the property [KH2] came to own[,]" and KH2 refused to reimburse the City for this benefit. Collector contended that "nuisance-abatement additions to the real-estate-tax bill are to be collected 'in the same manner and procedure for collecting real estate taxes' under [section 67.398.3], not by lien-enforcement proceedings, such as a sheriff's sale." Collector maintained that KH2 had failed to tender the correct amount for 2014 real property taxes and relied on section 67.398 as an affirmative defense, asserting that "[City] may either issue a special tax bill for nuisance-abatement costs or submit them for collection as additions to the real-estate-tax bill[.]" City elected to do the latter in this case.

4

KH2 moved for summary judgment. In granting that motion and entering judgment, the trial court found that KH2 was not an "owner" for purposes of section 67.398 because to conclude otherwise would place the burden on subsequent owners "simply if the city fortuitously chose to submit the cost of the abatement for inclusion in a tax bill that happened to issue at the time of that owner's tenure." Based on that understanding of the term "owner" and because the City had released the liens against the Property, the trial court granted summary judgment in favor of KH2. Collector timely appeals.

**Discussion**

Section 67.398, provides, in relevant part:

1. The governing body of any city or village, or any county having a charter form of government, or any county of the first classification that contains part of a city with a population of at least three hundred thousand inhabitants, may enact ordinances to provide for the abatement of a condition of any lot or land that has the presence of a nuisance including, but not limited to, debris of any kind, weed cuttings, cut, fallen, or hazardous trees and shrubs, overgrown vegetation and noxious weeds which are seven inches or more in height, rubbish and trash, lumber not piled or stacked twelve inches off the ground, rocks or bricks, tin, steel, parts of derelict cars or trucks, broken furniture, any flammable material which may endanger public safety or any material or condition which is unhealthy or unsafe and declared to be a public nuisance.

. . . .

3. Any ordinance authorized by this section may provide that *if the owner fails to begin removing or abating the nuisance within a specific time which shall not be less than seven days of receiving notice that the nuisance has been ordered removed or abated*, or upon failure to pursue the removal or abatement of such nuisance without unnecessary delay, the building commissioner or designated officer may cause the condition which constitutes the nuisance to be removed or abated. If the building commissioner or designated officer causes such condition to be removed or abated, the cost of such removal or abatement shall be certified to the city clerk or officer in charge of finance who shall cause the certified cost to be included in a special tax bill or added to the annual real estate tax bill, at the collecting official's option, for the property and the certified cost shall be collected by the city collector or other official collecting taxes in the same manner and procedure for collecting real estate taxes. If the certified cost is not paid, the tax bill shall be considered delinquent, and the collection of the delinquent bill shall be governed by the laws governing delinquent and back taxes. *The tax bill*

5

*from the date of its issuance shall be deemed a personal debt against the owner* and shall also be lien on the property until paid.

(Emphasis added.)

In two points, Collector contends that the "trial court erred in entering summary judgment for KH2 because it is *erroneous to declare*" (emphasis added) that

> [1] "owner," under [section 67.398], must always apply to the same person in that before September 18, 2014, the day KH2 got a "Collector's Deed," the word applied to KH2's predecessor in interest; and, as of that date, the word applied to KH2. [Section 67.398].
>
> [and]
>
> [2] [Collector's] obligation to add Springfield's nuisance-abatement costs to the 2014 real-estate-tax bill depends on their status as [City] liens in that this case is about cost recovery via [section 67.398], not enforcing [City] liens; and, the policy considerations the trial court deems too weak are, to the contrary, quite strong—even paramount.

Because our summary judgment standard of review, as previously noted, is essentially *de novo*, any claimed erroneous declaration of the law in the trial court's judgment is of no consequence to our independent review of the uncontroverted material facts and the application of the appropriate law to those facts. Our review is confined to the existence of a genuine issue as to any material fact and, if none, whether, based upon the uncontroverted material facts, the movant is entitled to judgment as a matter of law. *Highfill v. RPCS, Inc.*, 469 S.W.3d 1 (Mo.App. 2015). Viewed in that light and in the absence of any claim on appeal by Collector of a genuine issue as to any material fact, we understand Collector's points as claiming that KH2 is not entitled to judgment as a matter of law because (1) KH2 is an "owner" of the Property, as that term is used in the last sentence of subsection 67.398.3, and therefore, under that subsection, the City's abatement charges are a "personal debt" owed by KH2, and (2) the fact that City had no lien against the Property for those charges does not defeat KH2's "personal debt" liability

6

under that subsection.[5] Because we find no merit in Collector's first point, her second point is moot and need not be addressed.

In her first point, Collector makes a four-step argument that "owner" in the last sentence of subsection 67.398.3 applies to KH2: (1) the language in subsection 67.398.3 that "[t]he tax bill **from the date of its issuance shall be deemed a personal debt against the owner**" applies to the owner of the Property as of the date of the tax bill's issuance; (2) a "transaction . . . took place on September 18, 2014, the day [KH2] got its 'Collector's Deed,'" that made KH2 a "new owner" of the Property on that date; (3) Collector issued the tax bill for the Property on November 6, 2014, which included the abatement costs; and (4) "as of that date, KH2 owned the property."

Collector, however, cites no legal authority to support her first step—the legal premise of her argument—and we are aware of none. In addition, Collector offers no grammatical or logical analysis of the last sentence of subsection 67.398.3 to support her bare assertion that "[b]efore September 18, 2014, the word ['owner' as used in that sentence] applied to KH2's predecessor in interest; after that date, the word applied to KH2." Finally, Collector offers no analysis as to whether the language in subsection 67.398.3 has a clear and plain meaning of "owner" or, if not, which principle or principles of statutory construction support Collector's asserted meaning.

"When the words [of a statute] are clear, there is nothing to construe beyond applying the plain meaning of the law." *State v. Rowe*, 63 S.W.3d 647, 649 (Mo. banc 2002). In addition, "words must be considered in context and sections of the statutes in pari materia, as well as

---

[5] In the argument under her second point, Collector concedes that City has no liens to enforce, emphasizes the language in section 67.398.3 that the tax bill "**from the date of its issuance shall be a personal debt against the owner**[,]" and argues, as in her first point, that "[w]hen [Collector] issued the tax bill on November 6, 2014, KH2 was the owner, and had been since September 18, 2014."

7

cognate sections, must be considered in order to arrive at the true meaning and scope of the words." ***South Metro. Fire Prot. Dist. v. City of Lee's Summit***, 278 S.W.3d 659, 666 (Mo. banc 2009).

In subsection 67.398.3, "owner" is used twice—once in the first sentence and once in the last sentence. Its use in the first sentence is associated with the person or entity that received the required notice to abate the nuisance and failed to do so. Its use in the last sentence to impose personal liability for abatement costs clearly and plainly refers to the "owner" identified in the first sentence—the person or entity that received notice to abate the nuisance and failed to do so. Collector concedes that City never gave KH2 notice of the nuisance and, even if KH2 had been given notice, Collector concedes that KH2 would have lacked the legal authority and ability to abate the nuisance before the abatement costs were incurred.

Moreover, contrary to Collector's implication otherwise, the phrase "from the date of its issuance" in the last sentence of subsection 67.398.3 clearly, plainly, and merely refers to the date the abatement costs become a "personal debt" against the already-identified owner.[6]

Collector's first point is denied.

## Decision

The trial court's judgment is affirmed.


GARY W. LYNCH, J., Opinion author

DON E. BURRELL, P.J., concurs

WILLIAM W. FRANCIS, JR., J., concurs

---

[6] Because Collector has provided us with no legal basis upon which we are required to construe subsection 67.398.3, her public policy arguments for imposing personal liability for abatement costs on a subsequent owner of real property that neither received notice to abate the nuisance nor had the legal authority or ability to abate the nuisance before the abatement costs were incurred should be directed toward the Legislature rather than this Court. *See Rowe*, 63 S.W.3d at 650.