In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

 ST. LOUIS ASSOCIATION OF REALTORS, ) No. ED109207
 )
 Appellant, ) Appeal from the Circuit Court of
 ) St. Louis County
 vs. )
 ) Honorable Stanley J. Wallach
 CITY OF FLORISSANT, and )
 TODD HUGHES, )
 )
 Respondents. ) Filed: June 29, 2021

 Introduction

 The St. Louis Association of Realtors (“Appellant”) appeals the entry of summary

judgment in its declaratory judgment action against the City of Florissant (“the City”) and its

Director of Public Works, Todd Hughes (“the Director”).1 Appellant alleges regulations

governing residential rental property licensure in Chapter 605, Article XVII of the City’s

Municipal Code (“the Ordinance”) violate the Missouri Constitution and are preempted by state

law.2

 Appellant raises four points on appeal. In Point I, Appellant argues the trial court erred

by finding the Ordinance is not unconstitutionally vague. In Point II, Appellant argues the trial

1
 We will refer to the City and the Director together as “Respondents” where appropriate.
2
 All Code references are to the Florissant Municipal Code (2020) unless otherwise indicated. Chapter 605 is
entitled “Business Regulations” and contains twenty-one articles. Article XVII regulates residential rental real
estate.
court erred by finding the Ordinance provides adequate procedural due process. In Point III,

Appellant argues the trial court erred by finding the Ordinance does not violate the takings clause

of the Missouri Constitution. In Point IV, Appellant argues the trial court erred by finding the

Ordinance is not preempted by Mo. Rev. Stat. §§ 441.020, 441.040, or 441.710.3

 We affirm.

 Factual and Procedural Background

 The City enacted the Ordinance on July 8, 2019 and amended it to its current version on

March 9, 2020. The Ordinance requires residential rental property owners to apply for and

receive a license before renting to tenants. Each license costs $50 per year and must be renewed

annually. License holders must earn and maintain a “crime free housing certificate” from the

City. Licenses will not be renewed unless the license holder completes the annual application,

submits all necessary accompanying documents, and pays all outstanding fees and fines.

 Licenses may be suspended or revoked for City Code violations. Section 605.461 of the

Ordinance provides a license may be suspended if a license holder (1) failed to comply with

property maintenance codes more than three times in six months and failed to make corrections

in a reasonable period, (2) made materially false statements on their license application, or (3)

failed to report a change of occupancy. A license may be revoked if the license holder had more

than two suspensions in a twelve-month period. A license may be suspended or revoked if (1) a

license holder and tenant have been notified of three or more acts by the tenant or occupant

constituting disturbance or public nuisance to neighbors or the neighborhood, destruction of

property, or a danger to public health, safety, or welfare within one year; (2) a resident, guest, or

other person under the resident’s control engages in certain criminal activities; or (3) a utility

3
 All statutory references are to RSMo (2020), unless otherwise indicated.

 2
provider halts service and the license holder fails to restore service within fourteen days of

receiving notice.

 License holders may appeal suspension or revocation by filing a written appeal within ten

days of receiving notice of suspension or revocation. Appeals are heard by three-member panels

appointed by the Mayor of Florissant. Adverse panel decisions may be appealed to a court. If a

suspension or revocation is upheld, the property owner may apply for reinstatement. To achieve

reinstatement, the property must be re-inspected for full compliance with all applicable codes

and the basis for suspension or revocation must have been reasonably resolved.

 Appellant alleges the Ordinance’s suspension and revocation provisions are

unconstitutionally vague; violate procedural due process requirements; constitute an unlawful

taking; and are preempted by state law. The trial court heard oral argument on the parties’ cross-

motions for summary judgment on February 21, 2020. The City amended the Ordinance on

March 9, 2020 and supplemented the summary judgment record to reflect the March 9

amendment on April 24, 2020. The trial court granted summary judgment to Respondents on

August 22, 2020, finding the Ordinance is constitutional and not preempted by state law. This

appeal follows. Additional factual and procedural history will be provided below as necessary to

address Appellant’s claims.

 Jurisdiction and Standard of Review

 Although the issue of this Court’s jurisdiction has not been raised by either party, we

have a duty to address our jurisdiction sua sponte. City of Pagedale v. Murphy, 142 S.W.3d 775,

777-78 (Mo. App. E.D. 2004). “The [Missouri] Supreme Court has determined that the initial

review of the constitutionality of municipal ordinances is proper in the Court of Appeals, noting

that ‘claims that municipal ordinances are constitutionally invalid are not within the exclusive

 3
appellate jurisdiction of this Court.’” Damon v. City of Kansas City, 419 S.W.3d 162, 174 (Mo.

App. W.D. 2013) (quoting Alumax Foils, Inc. v. City of St. Louis, 939 S.W.2d 907, 912 (Mo.

banc 1997)).

 We review the trial court’s grant of summary judgment de novo. ITT Commercial Fin.

Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The

constitutional validity of an ordinance is a question of law this Court reviews de novo. City of

Sullivan v. Sites, 329 S.W.3d 691, 693 (Mo. banc 2010). We presume ordinances are valid and

lawful. Bennett v. St. Louis Cty., 542 S.W.3d 392, 397 (Mo. App. E.D. 2017). The

“interpretation of municipal ordinances and determination of whether they conflict with state law

are [also] questions of law and reviewed de novo.” City of St. Peters v. Roeder, 466 S.W.3d 538,

543 (Mo. banc 2015). “The rules governing interpretation of a statute are employed when

interpreting an ordinance. Accordingly, the Court will ascertain the intent of the municipality,

give effect to that intent, if possible, and consider the plain and ordinary meaning of the language

used.” Id. (internal citations omitted).

 Discussion

 Point I: The Ordinance is not Void for Vagueness

 In Point I, Appellant argues the trial court failed to apply the correct standard to its facial

vagueness challenge and incorrectly found the Ordinance was not unconstitutionally vague.

 1. The Trial Court’s Standard of Review

 Before reaching its vagueness arguments, Appellant asserts the trial court relied on two

faulty premises in its analysis.

 First, Appellant claims the trial court failed to distinguish between facial vagueness and

vagueness as applied to specific facts. Appellant emphasizes its challenge to the Ordinance is

 4
facial only, “not as applied.” “The distinction between a facial challenge and an as-applied

challenge lies both in the remedy the parties seek and the analysis of the Court. A facial

challenge to the constitutionality of an ordinance is more challenging than an as-applied

challenge.” Bennett, 542 S.W.3d at 397. Appellant argues the trial court acknowledged

Appellant raised a facial challenge only, yet used the as-applied standard of review to rule

against Appellant. Appellant asserts the trial court used Appellant’s failure to establish specific

instances of confusion to justify its judgment.

 Appellant’s argument is meritless. To establish facial unconstitutionality, Appellant must

establish “no set of circumstances exists under which the [Ordinance] would be valid.” State v.

Perry, 275 S.W.3d 237, 243 (Mo. banc 2009) (internal citations omitted). The trial court’s

judgment indicates the court found Appellant failed to establish the Ordinance is never valid as

required by Perry. The breadth of the trial court’s analysis was therefore correct.

 Second, Appellant claims the trial court erroneously limited its analysis to whether a

person of ordinary intelligence could understand the Ordinance and failed to consider if it is

susceptible to arbitrary and discriminatory enforcement. We disagree. The test for vagueness is

“whether the language conveys to a person of ordinary intelligence a sufficiently definite

warning as to the proscribed conduct when measured by common understanding and practices.”

Cocktail Fortune, Inc. v. Supervisor of Liquor Control, 994 S.W.2d 955, 957 (Mo. banc 1999).

The trial court accurately noted the vagueness doctrine “protects against arbitrary and

discriminatory enforcement” by giving fair and adequate notice of proscribed conduct. Id.

Nothing in the trial court’s judgment suggests the court applied the wrong test or failed to

consider whether the Ordinance could be arbitrarily or discriminatorily applied.

 5
 2. Appellant’s Vagueness Allegations

 a. Section 605.459 of the Ordinance is not Vague

 Appellant first argues section 605.459 of the Ordinance is vague because it is unclear

whether violations are punishable by both criminal and civil penalties. Section 605.459 provides

failure to maintain or loss of a residential rental license “shall constitute grounds for the

revocation or cancellation of all outstanding occupancy permits issued for any parcels of

residential rental property of such owner associated with said rental license” (emphasis added).

Appellant argues this language means residential license revocation triggers mandatory

occupancy permit revocation. Because failure to maintain occupancy permits is a misdemeanor

under sections 405.465 and 405.480 of the Zoning Code, Appellant reasons the Ordinance is

vague because it purports to carry only civil or administrative penalties, but also subjects

violators to fines or imprisonment.4

 Respondents argue Appellant’s emphasis on the interplay between section 605.459 and

the Zoning Code is misplaced. Respondents note no penalties in the Ordinance are criminal and

argue penalties elsewhere in the Code do not make the Ordinance vague. Respondents assert

Appellant makes an “illogical connection” between the provisions permitting occupancy permit

revocation in section 605.459 and the criminal consequences of losing an occupancy permit in

section 405. Respondents rely on Ross v. Dir. of Revenue for the proposition civil license

revocation proceedings are unrelated to collateral criminal consequences of revocation in the

4
 Section 405.465 of the Zoning Code provides “no land shall be occupied or used . . . for any purpose whatsoever,
other than farming, until a Certificate of Occupancy is issued by the Building Commissioner.” Section 405.480
provides, “The owner or agent of a building or premises in or upon which a violation of any provision of this
Chapter has been committed or shall exist . . . shall be guilty of a misdemeanor punishable by a fine of not less than
ten dollars ($10.00) and not more than one hundred dollars ($100.00) for each and every day that such violation
continues; but if the offense be willful, on conviction thereof, the punishment shall be a fine of not less than twenty-
five dollars ($25.00) or more than one hundred dollars ($100.00) for each and every day that such violation shall
continue or by imprisonment for not more than ten (10) days for each and every day such violation shall continue or
by both such fine and imprisonment in the discretion of the court . . . .”

 6
DWI context. 311 S.W.3d 732 (Mo. banc 2010). In Ross, the Missouri Supreme Court held

“civil license-revocation proceedings under the revocation statute are unrelated to the criminal

provisions of the DWI arrest statute.” Id. at 736.

 We agree. In Ross, the Missouri Department of Revenue filed a civil action to revoke a

driver’s license under section 577.041. Id. at 734. Section 577.041 provides the Department of

Revenue may revoke a driver’s license after a hearing if a court determines these elements are

met: (1) the driver was arrested or stopped; (2) the officer had reasonable grounds to believe the

person was driving a motor vehicle while in an intoxicated or drugged condition; and (3) the

person refused to submit to a drug test. Id. The driver challenged the legality of her arrest for

the first time in the revocation proceeding, arguing her sobriety was not tested within one and

one-half hours of encountering the arresting officer as required by Missouri’s implied consent

statute, section 577.039.5 Id at 734-35. The driver reasoned an unlawful arrest does not satisfy

the “arrest” element of section 577.041. Id. The Missouri Supreme Court upheld the civil

license revocation, finding nothing in section 577.039 “compels application of its 90-minute time

limitation to the revocation statute, section 577.041.” Id. at 736. The Ross Court reminds us

“there is no need to refer to other similar statutes where a statute’s own language is clear.” Id. at

735. The Supreme Court held section 577.039 is applicable to criminal matters, but the civil

license revocations proceedings under section 577.041 are unrelated to criminal provisions. Id.

at 736. Where, as here, “statutes are remedial, because they are intended to protect the public”

they “are construed so they provide the public protection intended by [lawmakers].” Id. at 735.

 Here, the Ordinance alerts property owners to the civil consequences of rental license

revocation or suspension. The Ordinance contains no criminal provisions. Like in Ross, civil

5
 Section 577.039 provides drivers suspected of DWI impliedly consent to sobriety tests if the arresting officer has
“reasonable grounds to believe that the person to be arrested has violated the section, . . . when such arrest without
warrant is made within one and one-half hours after such claimed violation occurred . . . .”

 7
revocation consequences stand alone, unrelated to criminal punishment for the failure to

maintain a license. Appellant cites no authority establishing criminal punishment for failure to

maintain a license after its revocation in a civil proceeding transforms the civil penalty into a

criminal penalty.

 Appellant has not met its burden of establishing “vagueness permeates the text of [the]

law.” City of Chicago v. Morales, 527 U.S. 41, 55 (1999). “It is not enough to show that, under

some conceivable circumstances, the statute might operate unconstitutionally.” Donaldson v.

Missouri State Bd. of Registration for the Healing Arts, 615 S.W.3d 57, 66 (Mo. banc 2020).

Appellant had to establish “no set of circumstances exists under which the [Ordinance] would be

valid.” Perry, 275 S.W.3d at 243. Ross held laws carrying civil penalties are not vague simply

because conduct underlying the civil penalty also is punishable under a separate, criminal

provision of the law. 311 S.W.3d at 736. Appellant has therefore failed to establish “no set of

circumstances exist under which” section 605.459 can be valid. Perry, 275 S.W.3d at 243.

 b. The Ordinance’s Use of Categorical Terms is not Vague

 Appellant asserts the Ordinance is vague because it fails to define certain terms and

phrases in section 605.461(A)(4) (the “Criminal Activity Provision”). The Criminal Activity

Provision states:

 A. The residential rental license applicable to the residential rental property may

 be suspended or revoked by the Director of Public Works or designee following

 written notice to the owner and occupant(s) under the following conditions:

 ....

 4. A license may be suspended or revoked if any member of the household, guest

 or another person under the resident's control commits any of the following

 8
 criminal activities, if it is determined that the household member, guest or another

 person under the resident's control has committed such activities, regardless of

 whether such person has been convicted of any such activity, . . . :

 (a.) A felony crime under Federal or State laws on or in the immediate vicinity of

 the residence; (b.) A Class A misdemeanor under Federal, State or local laws or in

 the immediate vicinity of the premises; (c.) Any criminal activity that threatens

 the health or safety of, or the right to peaceful enjoyment of the premises by other

 residents; (d.) Any criminal activity that threatens the health or safety of, or the

 right to peaceful enjoyment of their residents or persons residing in the immediate

 vicinity of the premises; (e.) Any violent criminal activity at or in the immediate

 vicinity of the premises; (f.) Any drug-related criminal activity on or in the

 immediate vicinity of the premises; (g.) Any abuse of drugs or alcohol that

 threatens health, safety or right to peaceful enjoyment of other residents on the

 premises or persons residing in the immediate vicinity of the premises; (h.)

 Violation(s) of the offenses set forth in Chapter 210 of the Florissant Municipal

 Code; or (i.) Violation(s) of nuisance provisions set forth in Chapter 213 of the

 Florissant Municipal Code.

 Specifically, Appellant objects to the phrases: “criminal activity . . . regardless of whether

such person has been convicted;” “criminal activity that threatens the health or safety, or the

right to peaceful enjoyment of the premises of other residents;” “vicinity of the premises;” and

“abuse of drugs or alcohol that threatens health, safety, or right to peaceful enjoyment.”

Appellant argues further the phrase “abuse of drugs or alcohol” is also overbroad because it

prohibits legal conduct under State v. Beine, 162 S.W.3d 483, 486 (Mo. banc 2005).

 9
 We disagree. Respondents correctly note each of the complained-of terms are

permissible categorical phrases “of common usage[,] understandable by persons of ordinary

intelligence.” New Life Evangelistic Ctr. v. City of St. Louis, 564 S.W.3d 665, 675 (Mo. App.

E.D. 2018). The Missouri Supreme Court has held the public can be expected to understand

descriptive or categorical terms such as “intoxicated condition;” “under the influence;” “chronic

offender;” “close proximity;” and “immediate vicinity.” Id.; State v. Schroeder, 330 S.W.3d

468 (Mo. banc 2011); Feldhaus v. Sate, 311 S.W.3d 802 (Mo. banc 2010); State ex rel. Cook v.

Saynes, 713 S.W.2d 258 (Mo. banc 1986). Appellant does not explain how the phrases used in

the Criminal Activity Provision differ from the phrases in New Life Evangelistic Ctr., Schroeder,

Feldhaus, and Cook. We presume the public understands certain behavior is criminal and knows

the law. State v. Edwards, 433 S.W.3d 494, 497 (Mo. App. S.D. 2014); Strosnider v. Replogle,

502 S.W.3d 756, 760 (Mo. App. S.D. 2016). Moreover, “the vagueness doctrine does not

invalidate every ordinance which a reviewing court believes could have been drafted with greater

precision, especially in light of the inherent vagueness of many English words.” Bennett, 542

S.W.3d at 406.

 We disagree with Appellant’s assertion the phrase “abuse of drugs or alcohol” is vague.

The Missouri Supreme Court has held “abuse” is a readily understandable term and not vague.

See State ex rel. Zobel v. Burrell, 167 S.W.3d 688, 692 (Mo. banc 2005) (holding “animal abuse”

is not a vague term) and Prokopf v. Whaley, 592 S.W.2d 819, 823-24 (Mo. banc 1980) (holding

an administrative rule prohibiting “abuse of prisoners, either by word or act” is not vague). Laws

need not meet impossible standards of specificity; “the test is whether the language conveys a

sufficiently definite warning as to the proscribed conduct when measured by common

 10
understanding and practices.” State v. Duggar, 806 S.W.2d 407, 408 (Mo. banc 1991) (internal

citations omitted).

 Appellant’s claim the phrase “abuse of drugs or alcohol” is overbroad is baseless.

Appellant relies on the Missouri Supreme Court’s observation in Beine a law can be overbroad if

it prohibits “conduct a person has no right to engage in and conduct a person has a right to

engage in.” 162 S.W.3d at 486. Appellant’s argument overlooks the Court’s subsequent

clarifications in State v. Jeffrey, 400 S.W.3d 303 (Mo. banc 2013). In Jeffrey, the Court rejected

Beine’s applicability outside the First Amendment context, stating “not only is Beine’s

expansion of the overbreadth doctrine dicta, but it is bad dicta . . . . To the extent that [Beine

relies] on Papachristou for the proposition that overbreadth applies outside of the First

Amendment, those cases are incorrect.” 400 S.W.3d 303, 309 (Mo. banc 2013). Beine does not

support Appellant’s position because the First Amendment is not at issue. Id.

 C. The License Suspension and Revocation Requirements are not Vague

 Appellant claims section 605.461 of the Ordinance is vague because it fails to provide

sufficiently definite standards for when Respondents should suspend or revoke a license.

Appellant argues further section 605.461 is ripe for discriminatory or arbitrary enforcement

because it gives Respondents discretion to choose between suspension or revocation if (1) the

license holder and occupant have been notified of three or more acts constituting a disturbance,

public nuisance, destruction of property, or danger to public health, safety or welfare within

twelve months; (2) the Criminal Activity Provision is violated; or (3) the landlord, property

owner, or tenant has their water, gas, electric, sanitary sewer service, or solid waste collection

service halted by the service provider and fails to restore service within fourteen days of

receiving notice. Appellant argues these provisions are vague because “there are no standards or

 11
guidelines” controlling whether suspension or revocation is appropriate. Appellant notes the

standards and costs associated with reinstating a license vary depending on whether the license

was suspended or revoked, and concludes Respondents could unfairly revoke some licenses

while suspending others for similar offenses.

 Respondents argue the Ordinance is not vague because it gives the City discretion to

choose between suspending or revoking a license only for fact-specific violations. Respondents

argue the trial court correctly found “the determination of whether [a] license should be

suspended or revoked must be evaluated by applying the language to the facts.”

 We agree with Respondents. The Ordinance is clear: when the qualitative severity of a

violation is irrelevant, Respondents have no discretion to choose between suspending or

revoking a license. For example, suspension is the only punishment available for repeated

violations of and failure to comply with maintenance codes over a six-month period. Such

violations require no qualitative findings. When the qualitative severity of a violation relates to a

suspension or revocation decision, section 605.461 permits Respondents to consider aggravating

and mitigating facts. Unlike suspensions for outstanding maintenance code violations,

disciplinary hearings for public nuisances, property destruction, or criminal activity may require

Respondents to make detailed factual findings about the context and intent behind the violation

before imposing punishment.

 We “must endeavor, by every rule of construction, to give [the challenged law] effect.”

Duggar, 806 S.W.2d at 407. Appellant had to establish “no set of circumstances exists under

which the [Ordinance] would be valid.” Perry, 275 S.W.3d at 243. Appellant has not met its

burden. Section 605.461 “does not fail to give those of ordinary intelligence reasonable

 12
opportunity to know what is prohibited, nor does it fail to provide an acceptable standard for

those who apply [the Ordinance].” Duggar, 806 S.W.2d at 408.

 D. The License Reinstatement Requirements are not Vague

 Sections 605.461(c)-(d) of the Ordinance provide license holders who have had their

licenses suspended or revoked may apply for reinstatement if (1) the property is in full

compliance with all applicable codes, (2) the circumstances causing the suspension or revocation

have been reasonably resolved, and (3) the landlord pays for re-inspection of the property and

reinstatement of the license.

 Appellant argues the Ordinance does not adequately provide “guidance for how, once a

license is suspended or revoked, an owner could reasonably resolve the suspension or revocation

so as to be eligible for reinstatement.” Appellant asserts there are no “resources or references an

owner could turn to in order to determine what steps he or she must take to reasonably resolve

the circumstances.” Although Appellant concedes some bases for revocation or suspension are

easily remedied, Appellant argues other violations cannot be reasonably resolved because the

reason for revocation involves “past events that have ceased and cannot be abated.” Specifically,

Appellant argues the Ordinance does not address how a license holder could reasonably resolve:

(1) prior false statements during the license application or renewal process; (2) three or more acts

of public disturbance; (3) bases for suspension or revocation in the Criminal Activity Provision;

or (4) two or more suspensions in the prior twelve months.

 Respondents argue the trial court correctly found the Ordinance did not have to outline

specific procedures license holders must follow to achieve reinstatement. Respondents argue

“reasonable resolution” cannot be defined because the facts and context underlying each

 13
suspension and revocation are different and it would be impractical for the Ordinance to list

every way a violation could be resolved.

 We agree with Respondents. Ordinances need not meet a standard of “absolute certainty”

or “impossible standards of specificity.” Duggar, 806 S.W.2d at 408. We will uphold

ordinances when “the language . . . conveys to a person of ordinary intelligence a sufficiently

definite warning as to the proscribed conduct when measured by common understanding and

practices.” Cocktail Fortune, 994 S.W.2d at 957.

 The requirement violations must be reasonably resolved before reinstatement is not

vague. There are basic steps a license holder of ordinary intelligence could take to reasonably

resolve each allegedly vague violation.6 For example, license holders could resolve suspensions

for false statements during the license application or renewal process by correcting the false

statements as provided in section 605.456(c). License holders could reasonably resolve

suspensions or revocations for criminal activity or repeated public disturbances by evicting the

offending party.7 License holders could reasonably resolve revocation for two or more

suspensions in a twelve-month period by waiting for one suspension to fall outside the preceding

twelve-month period and applying for reinstatement. The Ordinance’s requirements are not

vague because persons of ordinary intelligence can understand the criteria for suspension,

revocation, and reinstatement. Cocktail Fortune, 994 S.W.2d at 957.

 Point I is denied.

6
 The following remedies are illustrative of why the license reinstatement provisions of the Ordinance are not vague.
We do not suggest they are the only – or best – ways to achieve reinstatement.
7
 Appellant claims Respondents argued eviction would not reasonably resolve conduct-based suspensions and
revocations. Appellant’s argument is based on an apparent misreading of Respondents’ brief and contradicts what
Respondents’ brief says. Respondents’ brief states, “if a property owner decides that eviction is warranted and
would reasonably resolve the circumstances giving rise to the suspension or revocation, the property owner may
decide to pursue eviction.”

 14
 Point II: The Ordinance Provides Sufficient Procedural Due Process

 In Point II, Appellant argues sections 605.461(A)-(B) of the Ordinance violate license

holders’ procedural due process rights because they deprive license holders of a property interest

before giving them notice and an opportunity for a hearing. Section 605.461(A)-(B) provides:

 (A) The residential rental license applicable to the residential rental property may

 be suspended or revoked by the Director of Public Works or designee

 following written notice to the owner and occupant(s) . . . .

 (B) Any appeal of a suspension or revocation must be made, in writing, to the

 Director of Public Works or their designee and received by the Director of

 Public Works or their designee within ten (10) working days of notification of

 suspension or revocation. The submission of an appeal will stay the

 suspension or revocation pending the holding of a hearing before a three (3)

 person panel consisting of a member of the Florissant City Council appointed

 by the Mayor, a resident of the City of Florissant appointed by the Mayor and

 an owner of residential rental property located within the City of Florissant

 who has been appointed by the Mayor, and the issuance of written findings

 and conclusions by the panel. Such hearing shall be held within a reasonable

 period of time following receipt of the appeal and written findings and

 conclusions will be issued within ten (10) days of such hearing.

 Appellant claims the Ordinance fails to “provide notice or an opportunity to be heard

prior to the suspension or revocation of the License.” Appellant relies on the fact section

605.461(B) states license holders can stay suspension or revocation by filing an “appeal,”

 15
reasoning the City can deprive license holders of a property interest in their licenses before

giving the license holders an opportunity to be heard.

 Respondents assert Appellant misreads the Ordinance. Respondents argue suspension or

revocation will not take effect until after the appeal period runs and, if an appeal is filed,

suspension or revocation is stayed until after a panel hears the appeal and issues written findings.

Respondents conclude the trial court correctly found the Ordinance affords sufficient procedural

due process protections because its plain language is clear no suspension or revocation will take

effect until after the appeal period has run.

 We agree with Respondents. “The fundamental requirement of due process is the

opportunity to be heard at a meaningful time and in a meaningful manner. This does not mean

that the same type of process is required in every instance; rather due process is flexible and calls

for such procedural requirements as the particular situation demands.” State ex rel. Nixon v.

Peterson, 253 S.W.3d 77, 82 (Mo. banc 2008) (internal citations omitted).

 Here, the Ordinance gives license holders notice and an opportunity to be heard before

depriving them of a property right. Although the Ordinance calls the hearing before a three-

member panel an “appeal,” it is functionally a pre-deprivation hearing because notices of

suspension or revocation do not take effect until (1) the period to file an “appeal” runs or (2) the

“appeal” is heard and the panel issues written findings and conclusions, which may then be

appealed to a court. Section 605.461(A)-(B) is therefore consistent with Peterson. 253 S.W.3d

at 82.

 Even if we accepted Appellant’s argument the pre-appeal notice of suspension

constituted a pre-hearing deprivation, we would still find it did not violate due process. Pre-

deprivation hearings “may not be required so long as the potential for harm to the defendant is

 16
slight and the statute advances legitimate state interests in providing ex parte preliminary relief.”

Id. Further, “a statutory scheme which permits an initial summary decision . . . without hearing

based on objective statutory criteria involving public safety does not violate due process

provided a full, post-deprivation hearing is available.” Jarvis v. Dir. of Revenue, 804 S.W.2d 22,

24 (Mo. banc 1991). The Ordinance offers sufficient procedural due process because it provides

objective, public safety-based criteria for suspension or revocation and provides license holders a

meaningful opportunity to be heard. Id.

 Point II is denied.

 Point III: The Ordinance does not Violate the Missouri Constitution’s Takings Clause

 Appellant alleges the Ordinance violates Article I, section 26 of the Missouri Constitution

because the requirements it imposes on license holders constitute a taking. Article I, section 26

provides:

 That private property shall not be taken or damaged for public use without just

 compensation. Such compensation shall be ascertained by a jury or board of

 commissioners of not less than three freeholders, in such manner as may be

 provided by law; and until the same shall be paid to the owner, or into court for

 the owner, the property shall not be disturbed or the proprietary rights of the

 owner therein divested. The fee of land taken for railroad purposes without

 consent of the owner thereof shall remain in such owner subject to the use for

 which it is taken.

 Appellant analogizes the Ordinance to instances where the government caused physical

damage to private property through public utility failures or eliminated the economic usefulness

of privately-owned land through legislation. See Akers v. City of Oak Grove, 246 S.W.3d 916

 17
(Mo. banc 2008) and Lucas v. S.C. Coastal Council, 505 U.S. 1003 (1992). Appellant concludes

the Ordinance unlawfully permits Respondents to engage in takings without just compensation

because it prohibits property owners from renting to tenants without a residential rental license

and provides a mechanism for Respondents to take licenses away.

 Respondents correctly argue the Ordinance does not constitute an unlawful taking.

Municipalities in Missouri have the police power to license and regulate businesses, including

rental property, without violating the takings clause. St. Louis Ass’n of Realtors v. City of

Ferguson, 499 S.W.3d 395, 398-99 (Mo. App. E.D. 2016). The exercise of a municipality’s

police power is subject to a reasonableness test. Glenn v. City of Grant City, 69 S.W.3d 126, 132

(Mo. App. E.D. 2002). An appropriate exercise of a city’s police power does not violate the

constitution even though such actions may interfere with an individual’s rights. Id. at 131-32.

 Here, the City’s purpose in passing the Ordinance was to increase public safety in rental

properties by imposing licensure requirements on rental property owners and operators. We

agree with the trial court’s conclusion the Ordinance is a reasonable exercise of the police power

that does not rise to the level of a regulatory taking.

 Appellant’s reliance on Akers and Lucas is misplaced. In Akers, the respondent city was

found to have committed a taking requiring compensation when the city’s sewer system

malfunctioned due to rainfall, backed up, and severely damaged several apartment buildings.

246 S.W.3d at 919. In Lucas, an owner of beachfront property intended to construct a house on

his property. 505 U.S. at 1006-07. The South Carolina legislature subsequently passed a

beachfront protection statute, effectively preventing the owner from building on his land. Id. at

1007. The United States Supreme Court held the operation of the statute constituted a taking

because it rendered the property economically valueless. Id. at 1031-32. Neither case is

 18
analogous to the facts here, where the City lawfully exercised its police power by passing a

business regulation ordinance that does not physically damage property as in Akers, or prevent

property from being used for its intended economic purpose, as in Lucas. The Ordinance is

therefore a lawful and reasonable business regulation that does not rise to the level of a taking.

 Point III is denied.

 Point IV: The Ordinance does not Conflict with State Law

 In Point IV, Appellant argues the Ordinance conflicts with and is preempted by Mo. Rev.

Stat. §§ 441.020, 441.040, and 441.710. Sections 441.020, 441.040, and 441.710, provide

landlords may evict tenants who violate the law.8 Appellant notes license holders facing

suspension or revocation must “reasonably resolve” Ordinance violations and argues “owners are

left on their own to divine what [reasonable resolution] may be.” Appellant argues license

holders at risk of suspension or revocation will feel pressure to evict to save their licenses,

effectively transforming a permissive remedy into a requirement.

 Respondents correctly argue nothing in the Ordinance mandates eviction; like state law,

eviction is a permissive remedy available to landlords. The Ordinance does not permit any

action forbidden by sections 441.020, 441.040, and 441.710. Conversely, the Ordinance does

not forbid any action the statutes permit. In both instances, eviction is left to the discretion of the

landlord.

 At most, the Ordinance is a valid supplement to state law because it is in harmony with

the general law of the state. Babb v. Missouri Pub. Serv. Comm’n, 414 S.W.3d 64, 70 (Mo. App.

W.D. 2013). The Ordinance does not elevate eviction to a mandatory remedy and therefore does

not conflict with state law.

8
 Section 441.020 provides landlords may evict tenants for illegal possession, sale, or distribution of controlled
substances on the premises. Section 441.040 provides procedures landlords must follow if they evict a tenant for
violating section 441.020. Section 441.710 gives landlords standing to bring eviction actions against tenants.

 19
 Point IV is denied.

 Conclusion

 For the reasons stated above, the trial court’s judgment is affirmed.

 _______________________________
 Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J. and
Michael E. Gardner, J. concur.

 20